O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DONNA J. ALLEN,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>   Defendant. | Case No. ED CV 15-01928-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Donna J. Allen ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying her applications for Social Security disability benefits. The Court concludes that the ALJ did not err in assessing Plaintiff's credibility about the severity and limiting effects of her symptoms. The ALJ's decision is therefore affirmed and the matter is dismissed with prejudice.

## I.

## BACKGROUND

Plaintiff filed applications for disability insurance and supplemental security income benefits on September 2, 2012, alleging disability beginning

May 14, 2012. Administrative Record ("AR") 178-86. After Plaintiff's applications were denied, she requested a hearing before an ALJ. AR 119. On June 12, 2014, Plaintiff, who was represented by counsel, appeared and testified at the hearing. AR 25-52. On July 25, 2014, the ALJ issued an unfavorable decision. AR 7-24. In reaching his decision, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the cervical spine; history of cervical spine fusion surgery in 2008; cervical radiculitis; obesity; and osteoarthrosis of the lumbar spine with lumbago." AR 12. The ALJ determined that despite her impairments, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: "she can occasionally stoop, kneel, crouch, crawl, and climb; occasionally walk on uneven terrain; do occasional work at heights; do no overhead reaching; do no climbing of ladders, ropes, and scaffolding; and is precluded from performing complex and detailed work (reasoning level greater than 2)." AR 13. The ALJ found that Plaintiff could not perform her past relevant work as a cashier and stocker because that work requires activities precluded by Plaintiff's RFC. AR 17-18. However, the ALJ ultimately determined that Plaintiff was not disabled because there was work available in significant numbers in the national economy that she could have performed despite her impairments. AR 18-20. After the Appeals Council denied Plaintiff's request for review, AR 1-6, this action followed.

## II.
## ISSUE PRESENTED

The parties dispute whether the ALJ properly assessed Plaintiff's credibility. See Joint Stipulation ("JS") at 3.

///
///
///

# III.
# DISCUSSION

## A. Background

At the hearing, Plaintiff testified that she has pain "a[]ll the time." AR 40. She testified that, even with medication, she would rate her pain as an eight on a scale from zero to ten. AR 40-41. She said that she experiences side effects from her pain medications, including "dizziness, fatigue, like fuzzy head and [she] can't drive." AR 41. Plaintiff stated that she has pain coming out of her neck and going down her left side. Id. She said that her right side has been going numb and it hurts her to lift anything heavy. Id. She also said that it hurts her hands to reach or grab, especially her left hand. Id. Plaintiff stated that she cannot lift or carry her grandson, who weighs 18 pounds. AR 38. She further stated that it would hurt her left hand to lift and carry a gallon of milk, and if she "lift[s] and carr[ies] anything in [her] right hand, it goes numb." Id. She said that she would be unable to grab even a 2-liter object with her left hand. AR 42. Although she could lift it with her right hand, she indicated that it would be painful to do so. Id. Plaintiff also testified that she cannot do things that require fine manipulation such as writing or using a computer keyboard or mouse because she is right-handed, and "anything [she] hold[s] or touch[es] with [her] right hand goes numb." AR 41-42. Plaintiff does not "really write," but estimated that she could write with her right hand for about 10 to 15 minutes. AR 42.

Plaintiff testified that she can sit for about 10 to 15 minutes before having to get up, and can stand for 20 to 25 minutes at a time before having to sit down. AR 38. She also testified that her left leg hurts, especially right after she wakes up, which causes her to "limp for a bit." AR 38-39. Plaintiff said that she has pain, numbness, and weakness in her left leg, which gives out on her. AR 39. She testified that her right leg also gives out on her, but not as often as

her left leg. AR 39. Plaintiff said that she can stoop, but "[n]ot much," because leaning forward hurts her back. AR 39-40. She estimated that she could stoop a few times during the workday. AR 40. She stated that she usually cannot reach overhead. Id. Plaintiff also stated that her daughter usually drives her and does most of the house cleaning. AR 39, 43. She testified that she could only do the dishes for "two or three minutes between the back pain and the lifting because [she has] glass." AR 43. Plaintiff said that her kids do most of the other household chores. Id.

In addition to this testimony, the ALJ considered an Adult Function Report completed by Plaintiff on May 29, 2013, which he summarized as follows: "[Plaintiff] reported . . . that she has no problems with personal care tasks, she goes to the grocery store once a month with her daughter, she handles her own money, and she sometimes takes her daughter to school." AR 14 (citing AR 247-54). The ALJ also considered an Exertion Questionnaire completed by Plaintiff on December 21, 2012. Id. (citing AR 236-38). Specifically, the ALJ noted that Plaintiff reported that she reads a lot, goes on the computer, and can walk around the block, although it takes her 30 to 45 minutes to do so. Id.

The ALJ determined that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of her symptoms are partially credible." AR 14. The ALJ went on to explain:

> In viewing the evidence in the light most favorable to [Plaintiff], the undersigned has credited some of [her] subjective complaints to the extent that they are consistent with the treatment records. Therefore, the residual functional capacity gives some consideration to [Plaintiff's] testimony about her hand weakness, difficulties with overhead reaching, drowsiness from her medications, as well as her reports of difficulty standing, walking,

4

> lifting and carrying. Some portions of [Plaintiff's] testimony and reports are supported by her history of cervical fusion surgery and the positive radiographic findings. However, full credit is not given to [Plaintiff's] allegations because they are inconsistent with the overall objective medical evidence and opinions of record. If the objective evidence and medical opinions in the file were considered alone, [Plaintiff] would be found to have fewer limitations; however, the additional limitations, such as no overhead reaching and reduction to a range of light exertional work are included to give some benefit of the doubt to [Plaintiff's] subjective reports. The preclusion of complex and detailed work is reasonable due to the combination of pain and medication side effects.

AR 17.

**B.    Relevant Law**

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2006)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036 (citation omitted). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). To the extent that an individual's claims of functional limitations and restrictions due to alleged symptoms are reasonably consistent

with the objective medical evidence and other evidence, the claimant's allegations will be credited. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. § 404.1529(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. Additionally, "[i]n weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Smolen, 80 F.3d at 1284.

**C. Analysis**

The ALJ provided specific reasons for finding that Plaintiff's subjective testimony was not entirely credible, each of which is supported by substantial evidence in the record. First, the ALJ noted that "[t]he credibility of [Plaintiff's] allegations regarding the severity of her symptoms and limitations

is diminished because those allegations are greater than expected in light of the objective evidence of record." AR 14. Plaintiff argues that "there is ample objective evidence to support [her] severe pain complaints." JS at 9. However, the only objective clinical findings Plaintiff cites in support of this argument are a February 4, 2011 electrodiagnostic study of her upper extremities showing "mild chronic and or residual C6 cervical radiculitis," AR 263, a September 24, 2013 lumbar spine MRI showing mild to moderate lumbar degeneration and no neural impingement on her lumbar, AR 349, and a March 20, 2014 physical examination showing tenderness in her cervical and lumbar spine, AR 355-56. See JS at 9-10.[1]

With respect to Plaintiff's cervical spine, an orthopedic examination conducted by Dr. Vicente R. Beranbe on January 4, 2013, indicated that Plaintiff "is tender along the posterior cervical structure. There is a paravertebral muscle spasm. Range of motion in normal. She has positive Spurling's test on the left." AR 337. As the ALJ noted, a second orthopedic examination conducted by Dr. Bernabe on June 19, 2013 was "essentially the same as the examination in January 2013, except that cervical spine range of motion was slightly decreased. However, there was not paravertebral muscle spasm and Spurling's test was negative." AR 16; see AR 342. With respect to Plaintiff's lumbar spine, both of Dr. Bernabe's examinations showed normal curvature, full range of motion, no muscle spasm, and negative straight-leg raising tests. AR 337-38, 343. The ALJ noted that x-rays taken on August 2, 2013 "found very minimal diffuse degenerative osteoarthritis changes, no evidence of spondylosis or spondylolisthesis, and very minimal lumbar scoliosis." AR 16 (citing AR 362). The ALJ also noted that Plaintiff's

---

[1] Without any citation to the record, Plaintiff also indicates that, "[o]n physical examination, [her] range of motion is quite limited." JS at 9.

September 24, 2013 MRI showed "slight" osteoarthrosis of Plaintiff's lower lumbar spine. Id.; see AR 353. Similarly, Dr. Bradley Griffeth observed that the MRI showed normal alignment of Plaintiff's lumbar spine, no instability, and only "tiny marginal osteophytes." AR 351. These clinical findings support the ALJ's determination that "[t]he objective evidence does not corroborate [Plaintiff's] reports of extreme progression of pain." AR 16.

Plaintiff also argues that the treatment she received as well as the fact that further surgical intervention was not recommended support her "severe pain complaints." JS at 9 (citing AR 266-75, 283, 308-309, 329). However, as discussed further below, the record indicates that Plaintiff's symptoms have been effectively controlled with pain medication. The only other evidence Plaintiff cites in support of the severity of her complaints are her own self-reports of pain to her doctors. See JS at 9-10. Thus, the record corroborates the ALJ's determination that the objective clinical findings do not support the alleged severity of Plaintiff's symptoms and limitations. See AR 14-17. A lack of objective medical evidence may not be the sole reason for discounting a claimant's credibility; nevertheless, it is a legitimate and relevant factor to be considered. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Second, the ALJ observed that, although Plaintiff's "activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." AR 14. The ALJ relied on Plaintiff's May 29, 2013 Adult Function Report, in which Plaintiff indicated that she has "no problem" with personal care. See AR 14, 248. The ALJ also noted Plaintiff's report that she "usually" takes her daughter to school, her daughter takes her grocery shopping once a month, and she is able to pay her bills and count change. See AR 14, 248, 250. The

ALJ also relied on Plaintiff's December 21, 2012 Exertion Questionnaire, in which Plaintiff wrote, "I read a lot and am on the computer but even doing that makes my neck hurt and I can't sit for long periods of time." See AR 14, 236. The ALJ further considered Plaintiff's report that she walks around the block for exercise, but it takes her 30 to 45 minutes "depending on how bad [her] left leg feels." See id.[2] Thus, the ALJ properly considered Plaintiff's activities of daily living in assessing her credibility. While Plaintiff is correct that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," JS at 11 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)), the extent of Plaintiff's activities support the ALJ's finding that Plaintiff's reports of the severity of her impairments were not fully credible. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).

      Third, the ALJ observed that "some of [Plaintiff's] allegations regarding the worsening of her symptoms . . . are inconsistent with her admitted activities of daily living and are so extreme as to appear implausible, especially in light of the somewhat benign objective medial findings." AR 15. It was

---

[2] In the Adult Function Report, which was completed about 5 months after the Exertion Questionnaire, Plaintiff indicated that she does not "read or walk anymore because it hurts [her] neck and extremities to do it." AR 251. The record shows that the ALJ was aware of this inconsistency and properly found it to be incredible, as discussed further below. See AR 15 (noting that "some of [Plaintiff's] allegations regarding the worsening of her symptoms to the point where she cannot . . . read or walk at all anymore[] . . . are inconsistent with her admitted activities of daily living . . .").

permissible for the ALJ to use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284)). The ALJ noted that, although Plaintiff testified that she can sit for only 10 to 15 minutes, AR 38, she reported in her Adult Function Report that she can sit for 30 minutes, AR 247, and sat "for over 30 minutes at the hearing," AR 15.[3] The ALJ further noted that Plaintiff's "allegations of significant inability to stand and walk" were undermined by the fact that none of her physicians prescribed, or even recommended, that she use a cane or walker. Id. An ALJ may take into account whether a claimant's statements regarding her symptoms and limitations are inconsistent with other evidence in the record. Cf. Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("[Claimant's] non-prescribed use of a wheelchair and unwarranted use of a cane also factored into the ALJ's determination that [his] subjective expression of his limitations lacked credibility."); Castaneda v. Astrue, 344 F. App'x 396, 398 (9th Cir.

---

[3] Plaintiff does not argue that the ALJ's observation that she sat for 30 minutes at the hearing is the type of "sit and squirm" jurisprudence disapproved of by the Ninth Circuit. See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985). In any event, the "inclusion of the ALJ's personal observations does not render the decision improper." Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)). This is not a case where the ALJ based his decision that Plaintiff is capable of working solely on observations made at the hearing; to the contrary, the ALJ's observations were but one of several factors used to discredit Plaintiff's testimony. See Drouin, 966 F.2d at 1259 (affirming credibility finding when ALJ's observation that at the hearing "there was no indication that claimant was suffering pain" "was only one factor taken into consideration"); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting that ALJ may rely on his observations as part of overall credibility determination).

2009) (upholding adverse credibility determination when claimant asserted difficulty walking and use of cane but had been prescribed neither). There was also no evidence of muscle atrophy, a fact from which the ALJ inferred that Plaintiff's pain has not altered her use of her upper and lower extremities to the extent alleged. AR 15; see Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (indicating that credibility of claimant's claim of excruciating pain diminished when she "did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual"). Accordingly, the ALJ did not err in discounting Plaintiff's credibility on this basis.

Finally, the ALJ noted that the treatment Plaintiff has received for her allegedly disabling symptoms "has been generally successful in controlling her pain symptoms." AR 15 (citing AR 265-276, 292-334, 354-62). The record indicates that Plaintiff has been treated with pain medication, cervical epidural steroid injections, suprascapular nerve blocks, and physical therapy. See, e.g., AR 266-69, 272-73, 284, 301, 305, 307, 323, 356. A conservative treatment history is a legitimate basis for an ALJ to discount a claimant's credibility. See Tommasetti, 533 F.3d at 1039; see also Fair, 885 F.2d at 604 (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment"). "Treatment with pain medication, physical therapy, and chiropractic care is generally viewed as conservative." Belman v. Colvin, No. 13-1466, 2014 WL 5781132, at *8 (C.D. Cal. Nov. 6, 2014) (collecting cases). However, courts have declined to consider treatment with "narcotic pain medication, steroid injections, trigger point injections, epidural shots, and cervical traction" conservative. See, e.g., Christie v. Astrue, No. 10-3448, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011).

Although the ALJ noted that Plaintiff's orthopedist referred to the treatment he recommended as "conservative," the ALJ does not characterize Plaintiff's treatment history as such. See AR 15 (citing AR 356). Rather, the

11

ALJ discounted Plaintiff's credibility on the ground that her symptoms have been effectively controlled with pain medication. See id. An ALJ may consider the effectiveness of medication and other treatment in evaluating the severity and limiting effects of an impairment. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v); see Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling"). Plaintiff counters that, "despite the various forms of treatment [P]laintiff has received, she still continues to complain of pain and has stated that her pain is getting worse as time progresses." JS at 12. Specifically, she argues that she was told that "injections would not help" and the "surgeon refused to do another surgery." Id. at 9.

  Dr. Farbod Asgarzadie, a colleague of Plaintiff's surgeon, reviewed her April 26, 2011 CT myelogram and did not recommend further surgical intervention of her cervical spine because: (1) "there is no screw loosening or any significant stenosis at the level of possible pseudoarthrosis"; (2) "she does not have any significant stenosis at any other level"; and (3) "[t]here are some mild degenerative changes with small posterior disk protrusions in the upper cervical spine not causing any significant stenosis." AR 329. As the ALJ noted, Plaintiff was started on pain management and received Naproxen, Soma, and Vicodin. AR 15 (citing AR 265-76, 307, 324). It also appears from the record that Plaintiff had a few epidural injections and nerve blocks in June through August 2012, see AR 265-76, which she indicated did not work, see AR 307.[4] Nevertheless, the record supports the ALJ's finding that Plaintiff's symptoms were well-controlled by medication. Overall, Plaintiff's treatment records reflect continuation and adjustment of prescription medications and some ordering and completion of additional testing. See, e.g., AR 265-76, 297, 299-

---

[4] Plaintiff also indicated that physical therapy did not help. See AR 356.

305, 307, 324, 349, 356-57, 359, 361. Plaintiff recently told her primary care physician that she would continue her current pain medications because they "help[] somewhat" and requested refills. See AR 307, 356. The ALJ also noted that Plaintiff "has not required emergent treatment for pain, and she has not requested or been referred to other treatment modalities such as biofeedback, acupuncture, or a TENS unit." AR 15. It was not unreasonable for the ALJ to rely on Plaintiff's positive response to prescription pain medication in assessing the credibility of her claims of disabling symptoms.[5]

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. Smolen, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Fair, 885 F.2d at 604. The ALJ reasonably relied on several reasons, which are fully supported by the record, in rejecting Plaintiff's subjective testimony. Reversal is therefore not warranted.

///
///
///
///

---

[5] Even if the ALJ erred in analyzing Plaintiff's treatment history, because the ALJ gave other sufficient reasons for finding Plaintiff not fully credible, any error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: September 30, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge